ABNER S. TAYLOR & another *vs.* INHABITANTS OF PLYMOUTH

The provision in the Rev. Sts. *c.* 18, §7, that when the pulling down of a building, by direction of firewards, shall be the means of stopping a fire, the owner of such build ing shall be entitled to recover reasonable compensation therefor from the town, does not apply to a building which is pulled down, by such order, after it is so far burnt, that it is impossible to save it from destruction by fire.

THIS was an action on the Rev. Sts. *c.* 18, § 7. By § 4 of said chapter, it is provided, that " the firewards, who shall be present at the place in immediate danger from any fire, or any three of them, and, where no firewards are appointed, the selectmen present, or, in their absence, two or more of the civil officers present, or, in their absence, two or more of the chief military officers of said town present, shall have power to direct the pulling down or demolishing of any such house or building as they shall judge necessary to be pulled down or demolished in order to prevent the further spreading of the fire." By § 7, it is provided, that " in case the pulling down or demolishing of any house or building, by directions of the firewards or other officers aforesaid, shall be the means of stopping the said fire ; or if the fire shall stop before it come to the same ; then every owner of such house or building shall be entitled to recover a reasonable compensation therefor from the town ; but when the building so pulled down or demolished shall be that in which the fire first began and broke out, the owner shall receive no compensation therefor "

The trial was before *Hubbard*, J. whose report thereof (so far as it respected the point on which the case was decided by the full court) was as follows: The building mentioned in the plaintiffs' declaration was pulled down, during a fire in Plymouth, on the 4th of February 1843. It was admitted that the building was owned by the plaintiffs; that the fire did not first begin therein, but reached it; and that the progress of the fire, in the direction of that building, was stopped by the act of pulling it down. The evidence showed, and the parties admitted, that before the demolition of the building was begun, it was materially on fire in more than one place; that at the time, it was impossible to save it from destruction by fire; and that it was not insured.*

The defendants contended that the plaintiffs could not, under the statute, maintain this action: and that, if they could main tain it, the measure of damages would be the value of the building at the time the order was given to demolish it, and not its value before the fire. The judge instructed the jury, *pro formâ*, that the plaintiffs were entitled to recover nominal damages, and a verdict for such damages was returned for the plaintiffs, subject to the opinion of the whole court. Verdict to be set aside, and the plaintiffs to become nonsuit, if they are not entitled to maintain their action. An assessor to be ap pointed, to ascertain the true value of the building before it was on fire, if the plaintiffs are entitled to recover that value.

*Eddy & Coffin*, for the plaintiffs, cited 3 Kent Com. (1st ed.) 185, 186; *Mayor, &c. of New York* v. *Lord,* 18 Wend. 126, and 17 Wend. 285; *Jacob* v. *City of Louisville,* 9 Dana, 114.

*Eliot & Gilbert*, for the defendants, cited 17 Wend. 295, 296; *Stone* v. *Mayor, &c. of New York,* 25 Wend. 157; 2 Phil. Ins. (2d ed.) 81.

SHAW, C. J. The plaintiffs bring their suit against the town, to recover damage for the value of a building alleged to have been pulled down, by order of the firewards, by means of

---

* The evidence on the question, whether the building was demolished by order of the firewards, was stated in the report of the judge, subject to the opinion of the whole court. The ruling at the trial was, that the evidence supported the allegation, in the plaintiffs' declaration, that it was so demolished

which the flames were stopped during a fire. It is founded on the Rev. Sts. *c.* 18, § 7.

The first question is, whether the building was demolished under such circumstances as to render the town responsible under the statute. It appears that before any order was given for pulling down the building, (supposing the order to have been rightfully given, which is denied by the defendants,) the building was materially on fire in more than one place, and that it was impossible to save it from destruction by fire. The force, therefore, which was used for pulling it down, rather hastened than caused its destruction. There was no voluntary sacrifice of the property of one proprietor for the safety of other proprietors; it was rather the pulling down of the burning materials of a house already in flames and partly consumed, and the destruction of which was inevitable, in order to prevent them from spreading the flames. The loss, intended by the statute to be compensated by the town, was such a loss as is the immediate consequence of the act of the firewards. But when the cause has already taken effect, and the destruction is unavoidable, the loss of the owner is not the consequence of the act of the firewards, but the consequence of the fire. We do not mean to say that danger, however imminent, of destruction by fire, should prevent the owner from having compensation; nor even the fact of a spark kindling in the roof, which might be easily put out. But the distinction is obvious between a case of imminent danger, in which, though the chance is small, the building may be saved, and a case, where the cause of destruction has taken effect, and cannot be arrested. When this has occurred, to all practical purposes the loss has occurred. In case of insurance of a building against fire, by a policy expiring at 12 o'clock at noon; if a fire should commence at 11, in the same street, and spread in that direction, but not reach the house at 12 o'clock; if, at that time, it be whole, and sound, and untouched by the flames, though in great danger, and though burnt soon after, I think the insurers would not be liable. But if, at that time, the building were materially on fire, and the destruction commenced, and its completion inevitable, I cannot

doubt that the house must be considered as lost, by the peril insured against, within the time, though not wholly consumed.

We think our construction of the statute draws some aid from other parts of the statute itself. It is obvious that the mode in which the pulling down of a house tends to stop a fire is, that it makes a gap ; it breaks the continuity of combustible materials, which would otherwise feed and extend the flames. The statute provides, that if such pulling down of any house " shall be the means of stopping the said fire, or if the fire shall stop before it come to the same," then the owner shall receive compensation. This provision seems to us to carry some implication, that the house thus to be pulled down is one in the line along which the fire is extending, but one which it has not reached, at least not with a destructive power.

In order to charge the town, the remedy being given by statute only, the case must be clearly within the statute. Independently of the statute, the pulling down of a building in a city or compact town, in time of fire, is justified upon the great doctrine of public safety, when it is necessary. *Mouse's case,* 12 Co. 63. In 12 Co. 13, Lord Coke — putting the case as an illustration of a general proposition, that what the immediate safety of the public requires is justifiable — says, " for saving of a city or town, a house shall be plucked down, if the next be on fire." It is one of those cases, to which, says Mr. Justice Buller, the maxim applies, *salus populi suprema est lex.* 4 T. R. 797. But if there be no necessity, then the individuals who do the act shall be responsible. This is the more reasonable, as the law has vested an authority in the proper officers, to judge of that necessity. But the town is responsible by force of the statute only, and such responsibility is limited to the cases specially contemplated. The court being of opinion that the case in question was not one contemplated by the statute, it becomes unnecessary to express any opinion upon the other questions suggested by the report.

*Verdict set aside, and plaintiffs nonsuit.*